May it please the Court, I'm Kevin Askew on behalf of the appellant, Cirrus Beijing, and with the Court's permission, I'd like to reserve four minutes for rebuttal. Okay, watch your clock. We're here on this appeal today because the District Court dismissed Cirrus Beijing's initial complaint with prejudice without leave to amend on the basis of a factual finding that was not supported by anything that was either the District Court. Our tort claims were premised on a letter that Mr. Adams sent to the National Equities Exchange in quotations, otherwise known as the NEEQ. It's an over-the-counter stock marketplace based in China. The District Court found that Mr. Adams' communications were protected by the California application process was quasi-judicial. But there was nothing in our complaint, nothing before the Court, to suggest that. The complaint contained only a limited handful of facts about the NEEQ, namely that it's a Chinese over-the-counter stock marketplace, that it was considering a listing application from Cirrus Beijing, and that Mr. Adams had sent a letter to the NEEQ. None of those allegations has anything about the nature of the process that the NEEQ employs when it's deciding listing applications, and nothing about those facts suggests that the process is quasi-judicial. Now, of course, the reason that we did not allege those kinds of facts in our complaint is because the litigation privilege is an affirmative defense, and it's a — it's an affirmative defense that Mr. Adams bears the burden of proving. Plaintiffs aren't put to the burden of alleging facts in their complaint to conclusively refute every possible affirmative defense, like the litigation privilege, that a defendant might later choose to assert. The District Court, however, took — So defendants hadn't yet filed an answer? That's correct. There was no answer filed. But this wasn't even in the case as an affirmative defense yet. That's right. It had not been formally asserted. The District Court took the limited facts about the NEEQ that we had pled in the complaint, and from that somehow concluded that the factors outlined in the Picton case by the California Court of Appeal for determining whether an entity is quasi-judicial, the District Court found that those factors were satisfied. And for purposes of this appeal, the two most relevant factors are, number one, whether the administrative body is vested with discretion based upon investigation and consideration of evidentiary facts, and number two, whether the entity is entitled to hold hearings and decide the issue by the application of rules of law to the Well, it is fair to say that the argument on the other side was not only that you specifically listed some functions in your complaint, but also they could make reasonable conclusions as to what the body must do based upon the complaint that you made. Essentially, they had the ability to investigate, and theoretically, by implication, to litigate and decide issues in regard to the investigation requests that have been made. Is that right? No, I don't think it is, Your Honor, because what we had in the complaint and what we attached to our complaint as an exhibit is an unsolicited letter from Mr. Adams that was sent to the NEEQ. We don't know anything. There's nothing in the complaint or the record about what kind of process the NEEQ employed when it received that letter. Was there anything in the record that said the NEEQ could hold a hearing? No, there was nothing. That's right, Your Honor, there was nothing in the record. Was there anything in the record that said that the NEEQ could decide by application of rules of law to the facts? No, Your Honor, we don't know. There's nothing in the record about the standards or the rules that the NEEQ applied in this process, let alone whether they were rules that had the force of law. Is there anything in the record that said that the NEEQ had the power to conduct an investigation as opposed to the power to say your client's application is denied? There was not. So we don't really know what the District Court was thinking of or looking at when it stated in its order that the NEEQ powers include these items. The District Court didn't explain the finding or point to anything in the record. Mr. Adams makes several attempts in his briefing to justify the District Court's order. He cites the Fontani case, which is from the California Court of Appeal. Mr. Adams makes the argument that there's, as I understand the argument, is that there's some kind of per se rule that U.S. courts have found that stock exchanges are kind of per se quasi-judicial. But the Fontani case involved the NASD, which was the regulatory and disciplinary arm of NASDAQ. There's no kind of per se rule that any stock exchange anywhere in the world is a quasi-judicial entity. You have to look at each entity on its own facts. In many cases involving U.S. courts or administrative bodies, U.S. courts are very familiar with those entities or can easily look up and find the regulations governing those entities to determine whether an entity is quasi-judicial. So we don't actually see this come up in a case law very much. Here we're talking about a relatively new entity that's only been around for a few years in a foreign country that is not something that U.S. courts and  jurisdictions can apply their common sense and judicial experience to resolve on a motion to dismiss. This is something that, if the case is remanded, Mr. Adams is free to raise this issue later on in the litigation after discovery. But it's an inherently factual question that will likely require discovery and likely also expert testimony on the nature of the NAEQ listing process. Mr. Adams also makes a reference to the allegation in our complaint that the NAEQ is regulated by the China Securities Regulatory Commission, which is the Chinese government entity that regulates securities markets. But it's not enough to make something quasi-judicial. The fact that something is regulated by a government entity is not enough to make the regulated entity quasi-judicial. The Securities and Exchange Commission in this country regulates a whole host of issuers and financial institutions. That doesn't mean that all of those issuers and financial institutions are quasi-judicial bodies such that any statement made to those entities is covered by the litigation privilege. Would there be anything to distinguish the district court's ruling in this case from any case involving essentially any agency like this in any country anywhere in the world? Is there a case? Bad question. Would the district court's analysis essentially apply to any similar agency in any other country in the world? It's hard to say, Your Honor, because we don't know exactly what the district court's rationale was. To the extent, you know, the district court intended to hold that because the Chinese securities regulators that it itself was a quasi-judicial entity, then I think that would sweep too broadly and potentially cover any, you know, entity that's regulated by a government anywhere around the world. Well, one of your primary objections is that the district court didn't explain exactly how it arrived at its conclusion. That's correct, Your Honor. So our request to this court is that the dismissal order be reversed outright. This was an affirmative defense. The complaint did not clearly establish on its face that the litigation privilege applied, and it was not our burden to establish or to allege facts demonstrating that the litigation privilege did not apply. But even if we had been required to plead those facts, it's a bedrock principle of law in this circuit that it is, in most cases, inappropriate for a district court to dismiss an initial complaint with prejudice without needing to amend unless it's obvious from the face of the complaint that the complaint could not be saved by any amendment. And that's not what we had here. We don't think we're required to do it, but we certainly could allege additional facts making clear that the NEAQ is not a quasi-judicial entity and not subject to the litigation privilege. But here there was no reason for the district court to find that the complaint couldn't be saved by amendment, and the district court, in fact, didn't articulate any reason why he dismissed those claims with prejudice versus without prejudice. All right. Do you want to save the rest of your time? I will. Thank you, Your Honor. Thank you. Good morning. May it please the Court, my name is Larry Osborne, and I represent the appellee Christopher Adams. The issue before us appears to principally be the litigation privilege that the district court found to give absolute immunity to Christopher Adams for his letter that was sent to the NEAQ, Chinese, for Beijing, public listing of stock. The cases that are applicable to the litigation privilege under Civil Code Section 47 identify the broad and liberal application of the litigation privilege, and the reason for that is cited in the Picton case, which analyzes and the district court used to analyze the elements of a judicial proceeding. But in the Picton case, they also cite Silberg, which says that absolute immunity is necessary to assure that people can communicate with public officials regarding wrongdoing and to correct the wrongdoing of those matters. And this is exactly what the appellant has argued, and it's exactly what they pled in their complaint. The basis for their claims are, is that this letter was sent to the NEAQ, and that the NEAQ had a, it was sent to the surveillance division. And that's, you can see that not only from the allegations in the complaint paragraph 51 through 59, but you can also see that in the attachment to the complaint, which is Exhibit A to the complaint. The privilege doesn't protect complaints to any public official. It protects complaints to quasi-judicial entities, correct? And judicial proceedings, yes. And what facts were actually in the record determined by the district court that meet the three factors in the test laid down by the California courts? In the Picton case, Your Honor? No, in this case. Okay. The factors that were identified. No, the facts. What facts were in the record from which the district court could correctly, in your view, conclude as a matter of law that the quasi-judicial privilege, that the quasi-judicial, this was a quasi-judicial agency, so that the litigation privilege was applicable? Paragraph 51 of the complaint alleges that the NEAQ is a governmental regulated, governmental body regulated by China's Securities Regulatory Commission. That's the first one. The paragraph 53 says that the NEAQ has a surveillance department of exchange that can inspect evidence and suspend listings on the stock exchange. These are the allegations that were made. Exhibit A to the complaint, which is Mr. Adams' letter to the NEAQ, cites rules and regulations of the NEAQ upon which the appellant was required to comply regarding disclosures. And they even cite the article 37.2, which are the detailed rules of the NEAQ regarding their application process and how those are evaluated. The letter also identifies that it was sent to the surveillance division of the NEAQ exchange. The paragraph 54 through 57 of the complaint says that the NEAQ or the surveillance division of the NEAQ acted on the information and the appellant's claim they were harmed by that. In support of the brief by the appellants, they also added in their supplemental record their brief in the district court regarding the motion to dismiss where they admit that Chinese chief regulatory authority, the NEAQ, is Chinese chief regulatory authority governing securities, and then they compare it to the NASDAQ. The factors that the court used, and these are the facts that were evaluated by the court, the district court, and these are plain in the complaint of the appellant. They're actual allegations, and we incorporate those attachments to the complaint as being part of the complaint, as we know, and those include the letter, which  facts given. Those facts are alleged to have been applied, whether they were correct or incorrect facts, and that the NEAQ took a position and the listing was either removed or denied. Did the court make any finding under Chinese law that this entity had the discretion based on investigation and consideration of evidentiary facts to act that it could hold hearings and decide by application of rules and law to the facts the result? Did the court make any finding that under Chinese law the NEAQ had these powers? They made those findings on page 7 and 8 of the order on the motion to dismiss, and the analysis that was given was that since the NEAQ has the power by the court, the power to accept the application, they also have the discretion to deny it based on these letters that's provided. So these are what's identified as giving the NEAQ or the surveillance division of the NEAQ as the investigative arm and body to be able to have the discretion to take in the evidence that was in the letter or evidence from any other source and evaluate that and then have a discretionary call on whether or not this listing could go forward. But the heart of a quasi-judicial authority is the ability to conduct hearings and the investigation would be in the hearing. The ability to or the opportunity to review evidentiary facts, to apply rules of the law, to make a determination. So the NEAQ has a lot of information in this particular finding, does it? I don't agree with that, Your Honor. I think it does, and it's those paragraphs that I mentioned, including the letter. The letter has a lot of information in it about how the NEAQ operates and the allegations of the complaint support those. But the way the NEAQ operates in terms of the letter is there was a request that they evaluate the evidence and make a determination. What constitutes a hearing would be the evaluation of the evidence. What constitutes a result of the hearing would be the discretion. This was your client's letter. I'm sorry, Your Honor. Your client's letter. My client's letter. So you're saying that because your client wrote it in a letter, the district court was justified in assuming that what your client wrote was true. As to the NEAQ's powers. The reason I say that, Your Honor, is because the appellant has attached that letter and has relied on that letter as part of their complaint and charges against Mr. Adams as a basis to claim harm or damage. And so when we incorporate all those, the district court uses its judicial experience and common sense to evaluate that picture as a whole and found that those elements, the Picton elements, had been met. The reason that the NASDAQ became part of this analysis is twofold. One of those is because of the Computer Express case, which is an SEC case, where someone sent a similar letter, asked for an investigation regarding a And it was determined to be absolutely privileged. The other side of that, why the NASDAQ became involved in this analysis, is because of the record in the district court where the appellant had made this argument that the NEAQ, an admission that the NEAQ was similar to the NASDAQ in terms of how it operated and essentially how the litigation privilege would be analyzed or how the discretion of the NEAQ should be analyzed. And so we included in our brief some analysis on that. But the fact of the matter is that the complaint has some very unique admissions in it about how the NEAQ operates and what they were doing and what the intent of the letter was supposed to be and the content of the letter and all of those with the judicial experience and the common sense and the application, the liberal application of the litigation privilege. And did the district court explain its thinking in making the determination that it made? In other words, it seems to me that all of a sudden he just came to the end and made the ruling without really fully exploring what your argument is, what's the problem with the complaint or what are the admissions within the complaint. Never put that together in a viable theory for his decision, did he? It identified the factors and it identified some of these facts that I've mentioned. I don't know that it involved them all, but it's on page 8. Most of that analysis is on page 8 of their order, and it identifies not only the elements of the litigation privilege under Civil Code 47, but it also identifies the PICTN factors. But how do we know, in fact, that NEAQ is like the NASDAQ? This was an argument that was raised or an issue that was raised by the appellants and we responded to it. But doing that, it supported what the NEAQ does and what the letter requested that the NEAQ do and what the appellants alleged the NEAQ did do and the result that happened after evaluating this evidence. So that's how the NASDAQ issue came into this picture. Does any part of the California law require that the agency actually be independent? Would it make a difference in this analysis if the agency were actually, in practice, always followed the direction from, say, the executive branch leaders without regard to investigation or hearings? Would that make a difference under California law as to whether it was quasi-judicial or not? Your Honor, that hasn't been noted. I don't know that it does make a difference because the protection would be necessary for someone as the Silberg case cites and the PICTN case cites, the protections for the litigation privilege are to not chill somebody's communication with a public official or a public entity or judicial proceeding to have them identify potential wrongdoing and remedy that wrongdoing. So the independent nature of that, I'm not sure that plays into the policy for the litigation privilege at all. But again, the privilege doesn't apply by its terms to communications with simple public officials who don't exercise quasi-judicial functions. Well, the one particular section that we're relying on and raised, that's correct. Is the state litigation still pending, the state litigation in which the $62 million verdict? It is, Your Honor. It's on appeal in the State Court of Appeal. And we don't have a hearing date yet, but it's fully briefed. So it's still pending since 2007. Your Honor, there was a couple of other items in our brief that I wanted to just touch on briefly. One of the issues was the notice of appeal from the appellants identified the motion for reconsideration as one of the aspects of their appeal, although they did not brief that, and it looks as though they did not pursue that. And under the case law, that would constitute a waiver of that claim. We also had an argument that the appeal was untimely, and I think that's been fully briefed. I don't necessarily need to talk about that too much with the time I have left, but I did want to mention that as part of our arguments today, that the appeal was untimely, and the court's order on a motion to dismiss constitutes a judgment on the merits, and there was no uncertainty as to that. The issue that's come up, and there's no dispute that it was a judgment on the merits, a final judgment on the merits. There was no leave to amend. The issue that's come up is whether or not there was a separate document under Rule 58 as to whether or not it met the separate document criteria. We've cited the case laws of Beaudry, Schimel, and Casey for the proposition that this was sufficient to meet the separate document requirement to start the notice of appeal running on May 23rd, and the appeal was filed 177 days later in violation of Federal Rules of Civil Procedure, Rule 4. There's also a waiver argument that's been about the separate document. That's under the Casey case that we cited. And so the arguments regarding an untimely appeal are that they were required to appeal within 30 days. They didn't do that. We believe we've satisfied the separate document requirement under Rule 58, and even if we did not satisfy that requirement, or the district court didn't satisfy that requirement under the rules, under the Casey case that we cited, it was a waiver because they filed a motion for reconsideration claiming that in their motion for reconsideration that they knew it was a final judgment on the merits, and therefore they waived their rights to require a separate document. All right. Thank you, counsel. Thank you. Thank you. There is nothing in the complaint that says the NEQ conducts an investigation, nothing in the complaint that says the NEQ holds hearings, nothing in the complaint that says the NEQ applies rules of law. The paragraphs in the complaint that Mr. Osborne just cited, as Judge Bennett has pointed out, refer largely and quote from the unsolicited letter that Mr. Adams himself sent to the NEQ. They don't say anything about the process. There's a reference to the surveillance department of the NEQ. There's nothing in the record about what that surveillance department is, what it does, whether it conducts investigations, whether it holds hearings. So technically, I thought that you had not pursued an appeal on the motion for reconsideration. Is that correct? There seems to be some confusion on the other counsel's part. I can clear that up, Your Honor. When we filed our notice of appeal, we did indicate that we were appealing from both the motion to dismiss order as well as the order on the motion for reconsideration. As we were thinking through the arguments for our brief and our opening brief, we did focus solely on the motion to dismiss order and are not seeking this Court's review of the order on the motion for reconsideration. Since the Court reviews the motion to dismiss order de novo, it seemed superfluous to challenge the decision on the reconsideration order. Just briefly, let me address the timeliness issue. The district court's May 22, 2017 order did not constitute entry of judgment because it didn't comply with Rule 58's separate document requirement. This Court's decisions have been very clear that if an order contains the Court's analysis, legal reasoning, it cannot also constitute the separate document that is required by Rule 58. There have to be two different documents. That didn't happen here. The district court never entered a separate judgment. We followed the rules to the letter in deciding when to file our notice of appeal. In your motion for reconsideration, you basically said that this was a final judgment, at least according to the other side. You didn't necessarily suggest that that necessarily constituted a waiver, but is that a waiver? That's actually not correct, Your Honor. If you look at the record in the further excerpt of record at page 3, we brought our motion for reconsideration under the Court's inherent power to reconsider its prior orders. It was not a Rule 59 motion. It was not a Rule 60 motion. And when Mr. Adams argued in opposition to that motion that it was untimely because we hadn't met the timing requirements of Rule 59 and Rule 60, we expressly said there is no firm deadline for motions for reconsideration like this one that are brought before the entry of a final judgment. That's FER page 2. FER page 3, we said here the Court has not yet entered a judgment. This is not like the Casey opinion. In Casey, this Court said that the appellant specifically moved for relief from judgment, and the Court said that the appellant indicated an unambiguous belief that a judgment has been entered. That's not what happened here. We never said that a judgment had been entered on May 22, 2017. We acknowledged that the Court's order was final, but that's a different question from the date on which our time to appeal began to run. All right. Thank you, Counsel. Thank you. Serious Beijing Court v. Adams will be submitted, and this session of the Court is adjourned for today. All rise.
judges: Wardlaw, Sessions, Bennett